IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ROBERT KING VIA, JR,
　　Petitioner,

v.                                                                    Civil No. 3:22cv685 (DJN)

HAROLD W. CLARKE,
　　Respondent.

## MEMORANDUM OPINION

Robert King Via, Jr., a Virginia state prisoner proceeding *pro se*, brings this petition

pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1)[1] challenging his convictions in the

Circuit Court for the City of Hampton, Virginia ("Circuit Court"). In his § 2254 Petition, Via

argues that he is entitled to relief on the following ground:

> Claim One: Via was denied the effective assistance of counsel when counsel's conduct prevented counsel from calling Christopher Martin and Ashley Aaron Watkins as witnesses for the defense.

(ECF No. 1-3, at 2–3.) Respondent asserts Via's claim lacks merit. Via has responded. (ECF

No. 19.) For the reasons that follow, the Motion to Dismiss (ECF No. 14) will be GRANTED

and the action will be DISMISSED.

## I.　PROCEDURAL HISTORY

"A jury of the Circuit Court of the City of Hampton ("trial court") convicted appellant

Robert King Via, Jr. of breaking and entering, conspiracy to commit robbery, and the use of a

firearm in the commission of a felony." *Via v. Commonwealth*, No. 0508-18-1, 2019 WL

---

[1]　　The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the spacing, capitalization, punctuation, and spelling in the quotations from the parties' submissions.

2931707, at *1 (Va. Ct. App. July 9, 2019) (footnote omitted).  Via appealed to the Court of

Appeals of Virginia.  *Id.*  The Court of Appeals of Virginia noted:

> This case has been tried many times.  After the first trial, it was appealed to
> this Court, and ultimately to the Supreme Court, which reversed on grounds not at
> issue in this appeal.  *Via v. Commonwealth*, 288 Va. 114 (2014).  Upon remand, the
> first retrial resulted in a mistrial on all but one of the charges because the jury could
> not reach a verdict.  Another trial for the remaining counts resulted in a hung jury.
> The final trial resulted in Via's convictions, and the instant appeal followed.

*Id.* n.1.  The Court of Appeals noted that, "[t]he sole issue on appeal is whether the trial court

abused its discretion in precluding Via from calling two defense witnesses, Christopher Martin

and Ashley Aaron Watkins, at his trial."  *Id.* at *1.  On appeal, Via argued their exclusion

deprived him "'of his constitutional right to call forth evidence in his favor.'"  *Id.*  The Court of

Appeals concluded that Via failed to preserve this objection.  *Id.*

The Court of Appeals provided the following relevant summary of the proceedings:

> At the trial that resulted in the instant appeal, the trial court, upon Via's
> counsel's motion, ordered the sequestration of witnesses.  During a recess, Via's
> counsel approached two defense witnesses, Martin and Watkins, with transcripts of
> their testimony from prior trials.  The trial court had repeatedly told Via's counsel
> not to communicate *ex parte* with witnesses in an attempt to refresh their
> recollection of previous testimony.  When court reconvened, the Commonwealth
> raised an objection to both Martin and Watkins testifying because Via's counsel
> had communicated with them outside of the courtroom regarding their anticipated
> testimony.  The trial court agreed, finding that Via's counsel had violated its
> sequestration order, and barred the witnesses from testifying.[2]
> Via's counsel responded that this was a misunderstanding and not an
> attempt to encourage the witnesses to offer consistent testimony.  He argued that
> his actions did not intentionally violate the sequestration rule and that he believed

---

[2]     Because we find that this error was not preserved, we do not rule on the trial
court's assessment that counsel violated an order based on Code § 19.2–265.1
sequestration rules or whether it erred in barring the witnesses' testimony on those
grounds.  However, we note that Virginia has long permitted a witness to refresh
his recollection by referring to a transcript of his prior testimony, even while on the
witness stand.  *Burns v. Gagnon*, 283 Va. 657, 679 (2012); *Portsmouth Street R.
Co. v. Peed*, 102 Va. 662, 676 (1904).

the practice of refreshing witness recollection under these circumstances was customary. He stated as follows:[3]

> Your Honor, I would proffer that I made my motion for separation Monday, January 8. Neither of those witnesses were present on that day. They had not been subpoenaed to appear until today's date. And so the first opportunity – I simply sought in my conversation with them – simply approached them during the recess and said please review your testimony from the prior trial, this is – so it's fresh in your memory, and simply gave them the transcripts. That's it.
>
> I certainly did not discuss what other witnesses have testified to. I'd never do that. I didn't -- I was not under the impression that that violated any kind of sequestration rule. In fact, it has been my observation that in the prior trials involving this specific defendant, Mr. Via, the prosecutor in the two prior trials, Mr. Scott Alleman would routinely provide the testimony -- transcripts from prior testimony during the course of the trial to make sure the witnesses were fresh in their memory. I had no objection to that. It appeared to me proper because, you know, when something extends this matter's been going on for years and it's hard for a person to remember what he testified to back in 2012 or 2016.
>
> . . . .
>
> And so all I did was simply invite the persons to review their trial testimony and that's it. And my impression was that was the practice of this court, because that's what I observed and I was -- certainly did not intend to violate any kind of rule, and I certainly wasn't seeking to inform the witnesses about what other persons have said so you can try to counter that. Nothing of that sort. Just simply refresh your memory about what you yourself have said so you don't -- you know, you don't forget what you said before and contradict yourself. So I didn't tell them that specifically, but that's the purpose, simply refresh your memory. And so if I have violated the court's rule, it was done so inadvertently. It was certainly not my intention to do any sort of underhanded thing or anything improper. I thought I was acting in a proper way. At least in my experience, that is a routine practice. At least -- it certainly would be improper if I were to try to tell the witness -- sequestered witnesses what it is that they have said, what other witnesses have said and said to be prepared to counter those. That would be wrong. I can say I can recollect, you know, previous proceedings, Detective Gainer would be talking with other witnesses -- defense witnesses. He testified about conversations he had in the hallway. You know, this is after they've been sequestered.

---

[3]     We include the entirety of his argument since our decision in this matter rests on what Via's counsel omitted in his argument to the trial court.

The trial court nonetheless found that Via's counsel had violated the sequestration order and barred Martin's and Watkins's testimony. The trial court held that Via's counsel engaged in conduct which the court had specifically prohibited. Additionally, the trial court noted that by approaching the witnesses with their prior testimony, counsel was "tacitly saying this is what I expect you to testify to." After this ruling, Via's counsel proffered what each witness would have testified to.[4] Ultimately, the trial court convicted Via of breaking and entering, conspiracy to commit robbery, and the use of a firearm in the commission of a felony. Via received a sentence of 23 years and one day in prison with three years and one day suspended. This appeal followed.

*Id.* at *1–2 (omission in original). In concluding that Via had failed to preserve his challenge, the

Court of Appeals of Virginia noted:

Via argues on appeal that excluding Martin's and Watkins's testimony violated his rights under the Virginia Constitution and Sixth Amendment to the United States Constitution to call forth evidence in his favor. Va. Const. art. I, § 8; U.S. Const. amend. VI. Yet, he failed to raise any of these issues at trial. Instead, counsel's argument concerned only why he believed he did not intentionally violate the trial court's sequestration order or otherwise act improperly.

*Id.* at *3.

## II.    APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that

he is "in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996

further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus.

Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted

only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008)

(citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may

---

[4]     Martin would have ostensibly provided an alibi for Via. Watkins would have offered impeachment testimony regarding a jailhouse witness for the prosecution.

4

not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state

court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has emphasized that the question "is not whether a

federal court believes the state court's determination was incorrect but whether that

determination was unreasonable — a substantially higher threshold." *Schriro v. Landrigan*, 550

U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).  Given this standard,

the decision of the Circuit Court with respect to Via's claim figures prominently in this Court's

opinion.

## III.   ANALYSIS

Via filed a petition for a writ of habeas corpus with the Circuit Court wherein he claimed,

*inter alia*, that he received ineffective assistance of counsel because counsel "violated the court's

sequestration order and was unable to call Chris Martin and Ashley Aaron Watkins as

witnesses."  (ECF No. 1-1, at 2.)

### A.   Factual Background for Via's Claim

The Circuit Court provided the following, pertinent factual summary with respect to this

claim:

> At trial, Douglas Gurley, Brent Conlon, Christopher Shorts, and Frank
> Auche III testified that in the early morning hours of September 11, 2010, three
> armed and masked men invaded Auche's residence in Hampton.[5]  Gurley and
> Conlon were in the living room when Gurley answered a knock at the door.  A man

---

[5]      Auche's grandfather was also in the house and a victim of the robbery, but
he passed away before trial.

came in and asked where the guns were. Two other armed men came in behind the first man.

The other two robbers went upstairs and brought Auche and his grandfather downstairs to join Gurley and Conlon in the living room. The first robber noticed Shorts on the back porch and brought him inside.

Gurley testified that the first robber did all the talking, and he was a heavyset black man. The victims testified that the first robber wore a bandanna that covered the lower half of his face.

The other two robbers were wearing all black clothing with masks, gloves, and large sunglasses, sometimes described as ski goggles. After the robbery, Gurley described one of the other robbers as white. At trial, he testified that he could not discern the race of the third robber, but at a prior proceeding he had described the third robber as a skinny black man. At trial, the lead investigator on the case testified that the victims had identified the robbers as two black men and one white man.

Auche testified that the robbers kept asking and looking for drugs and guns. After approximately twenty minutes, one of the robbers noticed police cars in front of the house, and the robbers fled out the back door. Auche testified that the robbers took his wallet with about $200 in cash in it.

Police canvassed the scene and recovered many items, including masks, guns, a glove, a pair of shoes, and sunglasses. DNA analysis indicated a match on one of the masks to Reginald Jones. Police arrested Jones.

Jones informed police that Via, Samuel "Sammy" Sanchez, and "Carl" were the other participants in the robbery. In speaking with Sanchez, police learned that "Carl" was Carl Genteline.

At trial, Genteline testified that on the night of September 10, 2010, he was at the residence shared by Sanchez and Jones. Jones' girlfriend and child lived with them. Genteline stated that he and Sanchez were best friends. Genteline testified that at some point during the night, Via, who Genteline knew from high school and who lived across the street from Sanchez and Jones, entered the residence. Genteline stated that Via and Jones talked about doing a robbery. Jones and Via left and came back with a Walmart bag full of "things that you would see in a burglar movie," like masks, gloves, and sunglasses. Jones told Sanchez and Genteline that they were going to do a robbery. Genteline drove Jones, Via, and Sanchez to Auche's residence, at Via's direction. Genteline stated that Via and Sanchez were "fully covered," and he identified the masks and sunglasses recovered from the crime scene as of the same type as worn by Jones, Via, and Sanchez.

Genteline testified that he drove by the residence a few times before Jones directed him to stop. Genteline stated that Jones, Via, and Sanchez went into the house while he waited in the car outside. Genteline saw the police arrive, and he drove away from the residence. He testified that he attempted to call Sanchez, but there was no answer; a call to Jones' phone rang in the car. Then, he received a call from a number he did not recognize, and it was Via, who directed him to pick up Jones, Via, and Sanchez. Genteline drove back to Sanchez's and Jones' residence. Genteline then left. He testified that he told police everything when interviewed. Genteline testified that he was not charged as part of the crime.

Jones testified that he and Via had been planning a robbery for approximately a month prior to its commission. Jones stated that Via needed money because he was unemployed at the time. Jones testified that Via wanted to rob Auche because Via knew that he might have drugs. Jones stated that he bought guns for everyone and cased the house with Via a couple of times prior to the robbery. Jones testified that Sanchez was aware of the plan, and Genteline agreed to drive.

Jones testified that he was the first one in the door and saw three white men. He brought a man from the back porch and held everyone at gunpoint in the living room. While he stayed in the living room, Via went upstairs to get two people. Jones held everyone at gunpoint while Sanchez and Via went through the house. Jones testified that they fled out the back door when someone noticed the police in front of the house. Jones stated that he was throwing everything off — gloves, mask, gun, etc. Jones testified that Sanchez's phone was dead, so Via called Genteline and directed him to pick them up. Jones stated that he had entered into a plea deal which required him to testify against Via.

Sanchez testified that on the night of September 10, 2010, he was hanging out with Genteline, who was unaware of the robbery plan. Sanchez stated that he, Jones, and Via got into the car, and Genteline drove them to Walmart. Sanchez testified that Genteline went inside and purchased the masks, sunglasses, and gloves that Sanchez, Via, and Jones wore during the robbery. Then, Via directed Genteline to a residence. Sanchez testified that Via stated that there were drugs and money in the residence.

Sanchez testified that Jones went into the residence first, and he and Via followed. While Via went upstairs to get another person, Jones told Sanchez to search the house. Once the robbers learned of the police presence, they ran out the back door and leapt a fence. Sanchez testified that he and Jones were discarding items, but Via did not. Sanchez stated that he tried to call Genteline, but his phone was dead. Sanchez gave Via Genteline's number, and Via called Genteline. Genteline picked them up and took them back to Sanchez's and Jones' residence. Sanchez testified that he was testifying as part of a plea deal.

(ECF No. 1-1, at 3–6 (footnote number altered).)

## B.    Analysis

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance." *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting

*Strickland*, 466 U.S. at 689).  The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

Furthermore, the Supreme Court has emphasized:

> When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is "doubly deferential," because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."

*Woods v. Etherton*, 578 U.S. 113, 117 (2016) (citations omitted).

In denying Via's claim, the Circuit Court stated:

> In Claim 1(A), Via contends that his counsel violated the court's sequestration order when he provided transcripts of prior proceedings to defense witnesses Chris Martin and Ashley Aaron Watkins.  Via argues that the testimony of these two witnesses would have changed the outcome of the trial because Martin would have offered compelling testimony of an alibi, and Watkins would have impeached Sanchez.  Via contends that if Sanchez is lying, then so are Jones and Genteline.
> During Via's case-in-chief, Via's counsel called Martin to the stand. The prosecution objected, and Martin did not testify. The same thing happened when counsel called Watkins to testify.  The court then observed that during a recess, defense counsel had approached Martin and Watkins with transcripts of their prior testimony and asked them to review to refresh their recollections.  The court concluded that this practice violated the sequestration rule and did not permit the witnesses to testify.  The court stated that by providing the transcripts, counsel was "tacitly" telling the witnesses how to testify.[6]

---

6        On appeal, Via argued that the court erred in its conclusion that counsel violated the sequestration rule and should have permitted the witnesses to testify. *Via*, 2019 Va. App. LEXIS 159, at *1.  The Court of Appeals did not rule on the merits, finding that the issue was not preserved, but noted that "Virginia has long permitted a witness to refresh his recollection by referring to a transcript of his prior

Counsel later proffered that Martin would have testified that around 10:30 P.M. on September 10, 2010, he went to Sanchez's residence to purchase marijuana. Martin then went across the street to visit Via, Via's girlfriend (Amanda Kidwell), and their infant son. Around 11:00 or 11:30 P.M., Martin left and noticed that Sanchez's and Jones' residence was dark, and the car that had been out front was gone. Counsel proffered that Watkins would have testified that while he was incarcerated in the Virginia Peninsula Regional Jail, he met Sanchez. Watkins would have testified that Sanchez told him that Sanchez felt bad for Via because Via had nothing to do with the robbery. Watkins would have stated that Jones and Sanchez told police that Via was their accomplice because they were protecting someone close to Jones.

At trial, Via made a motion for mistrial, arguing that the inability to call these witnesses was grounds for a mistrial; Via's counsel stated that there were "technical issues I guess with competence of counsel arguably[.]" Even if counsel had flatly admitted deficient performance, his statement would not be binding because courts determine whether counsel provided deficient performance. *See Harris v. Dagger*, 874 F.2d 756, 761 n.4 (11th Cir. 1989) (ruling that courts determine whether counsel's performance was ineffective).

Counsel did not perform deficiently in providing copies of prior transcripts to the witnesses.[7] Providing witnesses transcripts of their prior testimony is a common practice. *See Burns v. Gagnon*, 283 Va. 657, 681, 727 S.E.2d 634, 648–49 (2012). A reasonable counsel could have concluded that providing the witnesses with transcripts of their prior testimony to refresh their recollections was acceptable and not deficient performance. As such, Via cannot carry his *Strickland* burden. *See Smith v. Brown*, 291 Va. 260, 268, 781 S.E.2d 744, 749 (2016) (noting that petitioner bears burden of proving allegations under both prongs of *Strickland* analysis).

Moreover, Via cannot demonstrate a reasonable probability of a different outcome at trial had Martin and Watkins testified. Martin would have provided an alibi up to approximately 11:30 P.M. But Conlon, Shorts and Auche testified that the robbery occurred in the early morning hours of September 11, 2010. Indeed, the responding police officer testified that he was dispatched at 1:27 A.M. on September 11, 2010, and the lead investigator stated that the robbery occurred "just before" 1:30 A.M. Additionally, Via's own exhibit of Genteline's cell phone records shows numerous calls from approximately 1:30 to 2:00 A.M. on September

---

testimony, even while on the witness stand." *Id.* at *2 n.2.

7      Ordinarily, a habeas petitioner must provide affidavits from the witnesses as to what they would have stated at trial. *See Teleguz v. Warden of the Sussex I State Prison*, 279 Va. 1, 2, 688 S.E.2d 865, 869 (2010) (finding petitioner failed to carry *Strickland* burden where petitioner failed to attach affidavits from potential witnesses or state what they would have testified to). This is usually fatal to a habeas claim. *See id.* In this case, however, Martin's and Watkins' potential testimony is evident from the prior transcripts. In any event, Via cannot demonstrate prejudice.

9

11, 2010, which corroborates Genteline's, Jones' and Sanchez's testimony about the phone calls following the robbery.[8]

Similarly, Via cannot demonstrate prejudice concerning Watkins' testimony because Via presented witnesses to impeach Sanchez's testimony with similar statements to Watkins' potential testimony. Courtney Holmes and Tevin Davis testified that Sanchez told them he was lying about Via's involvement in the robbery. Accordingly, the jury was aware of this testimony, and Watkins' testimony would have been cumulative impeachment. *United States v. Bartko*, 728 F.3d 327, 338–39 (4th Cir. 2013); *Hash v. Dir. of the Dep't of Corrs.*, 278 Va. 664, 679, 686 S.E.2d 208, 216 (2009) (citing cases). Moreover, even if the jury had totally disregarded Sanchez's testimony, Genteline and Jones testified as to Via's involvement. Via, therefore, cannot demonstrate prejudice, and he has failed to carry his *Strickland* burden.

(ECF No. 1-1, at 7–10 (footnote numbers altered) (alteration in original).) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's rejection of Via's claim. *See* 28 U.S.C. § 2254 (d) (1)–(2).

The Fourth Circuit has admonished that "[w]hen, [as here], a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law . . . a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law." *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012). Here, the Circuit Court concluded that under established Virginia precedent, it was reasonable for counsel to assume that it was appropriate to provide his witness copies of their prior testimony because it was a common practice in Virginia. "Unfortunately, [Via] is the victim of a necessarily stringent procedural hurdle, coupled with a similarly important deference to attorney performance." *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995). Given these

---

[8] Via's girlfriend, Kidwell, testified that Via was home all night with her and did not leave the residence until the next day. Via testified in his defense and stated that Kidwell woke him up in the early morning hours of September 11, 2010, to give the baby a bottle. Accordingly, the jury heard testimony relating to an alibi and chose to disregard it.

circumstances, the Circuit Court's conclusion that counsel did not act in a constitutionally deficient manner is reasonable.

"In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (citing *Wong v. Belmontes*, 558 U.S. 15, 27 (2009); *Strickland*, 466 U.S., at 693). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112 (citing *Strickland*, 466 U.S. at 693). Here, the testimony of the multiple witnesses who stated Via participated in the robbery was convincing. Via contends that counsel's deficient performance critically undermined his alibi defense by depriving him of the testimony of Chris Martin, who could have supported his alibi. As noted by the Circuit Court, Martin's testimony was only tangentially helpful to that defense, because Martin claimed to have seen Via at home at 11:30 p.m., but the robbery occurred at 1:30 a.m. Moreover, Via's alibi was not particularly convincing. Via claimed to have been at home in his trailer from the evening of September 10, 2010 until the morning of September 11, 2011. Via shared this trailer with his girlfriend Amanda Kidwell and Shaggy Randy Linkert, Jr. (Jan. 10, 2018 Tr. 138.) The defense did not call Linkert to support Via's alibi. Moreover, the prosecution elicited fairly damning evidence reflecting that Kidwell was lying about Via's alibi and Linkert refused to testify falsely to support Via.

Specifically, a few days before testifying in support of Via, Kidwell posted on her Facebook page: "Work again tomorrow. Not off again till Monday. Then headed to Virginia Monday and Tuesday for Robert's court date. Hope this week goes by fast." (Jan. 10, 2018 Tr. 140.)

In response to that post, Linkert stated: "I'm sorry, but I couldn't do it Amanda.  I know Rob's probably pissed, but I couldn't.  It would ruin what I have left." (Jan. 10, 2018 Tr. 141.)

Kidwell responded: "Whatever.  You're just a fucked-up friend." (Jan. 10, 2018 Tr. 141.)

To which, Linkert stated: "I'm not lying to end up locked up, so call it what you want." (Jan. 10, 2018 Tr. 141.)

Kidwell responded: "I will." (Jan. 10, 2018 Tr. 141–42.)

The Circuit Court reasonably concluded that Via did not establish *Strickland* prejudice.

## V.     CONCLUSION

Respondent's Motion to Dismiss (ECF No. 14) will be GRANTED.  Via's claim and the action will be DISMISSED.  The § 2254 Petition will be DENIED.  Via's Motion for an Evidentiary Hearing (ECF No. 12) will be DENIED.  A certificate of appealability will be DENIED.

An appropriate Final Order shall issue.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Via and counsel of record.

_____ /s/ _____
David J. Novak
United States District Judge

Richmond, Virginia
Dated:  June 27, 2023

12